ORIGINAL
"DRW

MARK ANDREW BILTZ

52 WAIAPO STREET

KIHEI, HAWAII 96753

(808) 276-1151

MarkBiltz@brianevans.com

PRO SE

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 22 2018

at 2 o'clock and 35 min. PM
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

MARK ANDREW BILTZ

52 WAIAPO STREET

KIHEI, HAWAII 96753

Plaintiff, Pro Se


vs.


GOOGLE, INC.,

1600 Amphitheatre Parkway

Mountain View, CA 94043,

GOOGLE ADWORDS

1600 Amphitheatre Parkway

Mountain View, CA 94043,

SUNDAR PICHAI, Individually and in his Official Capacity at CEO of GOOGLE, INC.,

1600 Amphitheatre Parkway

Mountain View, CA 94043,

ALPHABET, INC,

1600 Amphitheatre Parkway

1

Mountain View, CA 94043,

DOES 1-50, Defendants

## CIVIL NO. CV18-00059 DKW/KJM

## PLAINTIFFS AMENDED COMPLAINT FOR FRAUD & BREACH OF CONTRACT

### JURY TRIAL DEMANDED

Plaintiff, MARK ANDREW BILTZ, in PRO SE, herein files this Complaint for Fraud, Breach of Contract, and Intentional Infliction of Emotional Distress. Plaintiff requests this Honorable Court grant him the latitude of a Pro Se litigant until Counsel enters an appearance.

### STATEMENT OF CLAIM

### COUNT ONE

### BREACH OF CONTRACT

Defendants entered a verbal Agreement with Plaintiff to allow for exclusive distribution via it's YouTube platform for the broadcasting of the music video, "At Fenway," in 2012 (for which Plaintiff was producer). The Agreement was that Evans would receive $1 per view for two full years. The video has received more than 11 million views to date on the service, which includes the actor William Shatner as a co-star.

### COUNT TWO

### FRAUD

2

The Plaintiff prays this Honorable Court will forgive that way this Complaint jumps back and forth with references to exhibits, but it is the only way to describe the series of events in the order that they occurred.

Defendants, who for whatever reason decided not to honor what the original Agreement was, instead turned the exclusive agreement to exclusively broadcast a music video into an "ad campaign," through its Google "AdWords" platform, and valued that campaign at over $3.5 million, and fraudulently marked the invoices as "PAID," despite the Plaintiff never paying a single dime for the campaign, nor seeking an advertising campaign, applying for credit, or signing any agreement whatsoever with Google AdWords. In late 2017, Defendants manipulated the invoices as displayed in the attached exhibits. Not only did this defraud the Plaintiff and the IRS, but also sent the message to Defendants shareholders, most likely, that they profited in advertising valued at over $3.5 million in their report to shareholders, which was never paid nor ever owed by Plaintiff. Additionally, by claiming the invoices were "PAID," it put our former Company, MCS, INC, and potentially the Plaintiff in his individual capacity (at that time MCS, INC was operating, yet authorization was never give to the Defendants to use our company name) on the hook for state and federal taxes for invoices that were never supposed to exist, never were paid, and never were requested by the Plaintiff. **EXHIBIT A** are invoices submitted to Plaintiff for this fictional ad campaign, with $0 taxes paid by Defendant ("due in July 2013, addressed to Plaintiff's Hawaii address), and **EXHIBIT B** are statements by Defendants marking the invoices as "PAID" when they never were. **EXHIBIT C** is an email from a Google AdWords employee (to artist Brian Evans of the music video) requesting to see a signed Agreement, when this Google employee knew the Agreement was verbal and binding, consummated by the broadcasting of the music video on its YouTube platform and making no claim that there was an

existing ad campaign. **EXHIBIT D** are actual Credit Memo's totaling $2,482,504.28 and

$1,031,589.80, none of which has been paid to Plaintiff towards the amount owed. In these

Credit Memo's, they specifically state "Do Not Pay. This is a credit for your account." And yet,

no payment of this credit has been made towards the balance due per the original Agreement.

These credits are dated five months later, and sent to a Massachusetts address, doctored by

Defendants, after the original invoices as stated in Exhibit A. Plaintiff did not live at the Hawaii

address listed in Exhibit A until September 2017, and is an address the Defendants could not

have possibly known, as even the Plaintiff did not know he would live at that address five years

earlier (the invoice claims to have been issued in 2013, only the address changed as they altered

the invoices in 2017, making no notation of the document being newly created in 2017).

**EXHIBIT E** is a published story where the Defendants have done something similar in another

case against them. When a Demand for Payment was made, Defendants then, again, manipulated

the invoices to claim the amounts were due, even invoicing Plaintiff for an amount that he never

received (**EXHIBIT F**). **EXHIBIT G** is an invoice for an amount never paid to the Plaintiff, and

on this particular invoice, taxes are noted as due (but not on any other previous invoices, in

retaliation for reporting this matter to the SEC and IRS, which are currently investigating what

we have provided).

Another example, **EXHIBIT H** displays invoices "PAID," and then manipulated in January

2018, five years after the original invoices, as Defendants attempt to cover up their deception

when Plaintiff requested what was owed per the original Agreement. **EXHIBIT I**, printed from

their own AdWords account, states that *without a contract or credit application*, Defendants

claimed "MCS Marketing, Inc," was provided a budget of *unlimited spending* plus $20,118.92,

and another column claiming, again, with unlimited spending plus $1,609.34.

The question is simple: What company permits $3.5 million in advertising, then credits that amount, lists no taxes, but only does so when Plaintiff requested payment for the original Agreement, without any credit application or agreement? It puts into question any piece of evidence Defendants could supply to support a defense. The individual whom this Agreement was entered into was conveniently fired in 2017, around the same time Plaintiff demanded payment. The Defendants did not merely credit the accounts to "0," but admit there is a credit due of these amounts by placing the "minus sign" on these amounts, amounts they have not refunded towards the original verbal agreement. This bring the Plaintiff to the allegations of fraud.

In this pending case, Defendants were involved in fraudulent misrepresentations and omissions in their own invoices in an attempt to deprive Plaintiff of monies promised in his original verbal agreement, consummated by the broadcast of the music video in question on their wholly owned YouTube platform. Even if the verbal agreement were not to be considered, Plaintiff is owed based on the Defendants own listed "CREDIT MEMO's" that clearly state "Do Not Pay. This is a credit for your account." The credit is due the Plaintiff, as well as any taxes, and interest and penalties as the law allows on both the credit memos and taxes since 2013. The balances of these two invoices is an admission of the value of exposure the music video provided their owned company, YouTube, which has garnered more than 11 million views on YouTube, featuring the actor William Shatner, orchestrated by co-defendant Google AdWords and Google, Inc. "Do not pay. This is a credit to your account," clearly states that the Plaintiff is due, in the least, that amount. It is the Defendants that put the value on it. In the Defendants efforts to conceal the verbal agreement, these manufactured invoices (See **Exhibit A**, dated in July 2013), the Defendants claimed Plaintiff owed the amount in that Exhibit. Further, the Defendants

manipulated the invoices to add Plaintiff's current Hawaii address, for which he did not reside

until 2017, nor had he ever heard of the address prior to locating the address as an available

home to rent a room and moving there from a different Hawaii residence. The manipulated

invoice was not updated with the current month or year to suggest the amount was currently due,

just the address. Five months later, the (both in 2013 and again in 2017), "Credit Memo's" were

issued for the exact same amount as an invoice to the Plaintiff's account five months earlier,

which clearly named both his former company name, and Plaintiff's home address individually,

despite neither of the corporate entities listed on either the invoices or "Credit Memo's" (without

our consent, agreement, or any application applying for such an astronomical amount of credit).

were provided or known to the Defendants at that address, nor was an account opened under

those publicly available corporate names through any means, even listing a company on an

invoice that hadn't existed yet (See **EXHIBIT J**). Defendants, without an agreement or credit

application, are suggesting that over $3.5 million in advertising was granted without any

agreement or even a credit application requesting such an amount. Given the Defendants have

manipulated invoices, dates, marked them "PAID" when they weren't (including non-payment or

billing of any taxes, See **EXHIBIT K**), it will be impossible for Defendants to prove or verify

that any documentation they present is either credible or hasn't been doctored. If the Defendants

will pay "$0" taxes, or even list taxes due on such a large amount of money on these combined

invoices, then believing they wouldn't do it to a court could be naïve (this is said with respect to

Your Honor, Plaintiff is just going by his experiences and this statement is not meant to offend

this Honorable Court). This is one of the biggest, if not the biggest, company is the world. The

Defendants answer to no one, ignored Plaintiff's every request to contact their legal department,

and believe they are above the law. The fact is, at a minimum, the Defendants owe Plaintiff what

their own credit memo's state, plus interest, penalties, taxes, and punitive damages as this Honorable Court may see fit. It is hard to believe anything the Defendants say when even they don't know what they're doing in their own accounting divisions (or they do?). If these earnings (via their own invoices) as outlined in **Exhibit A** were reported as earnings for advertising to their shareholders, it is not only civil, but criminal (outside of the fact that no taxes were paid or named on any invoice to Plaintiff). It is classic invoice manipulation and fraud in an effort to avoid payment of the original verbal agreement, and so we are now forced to show what we can prove, and that the Defendants admit the "Credit Memo's" were credited to an account created by the Defendants in order to conceal the original agreement, invoice us for them, then mark them "PAID," (when they weren't) with no taxes being paid and likely reporting these "profits" to shareholders as profits. Mailing these manipulated invoices also amounts to mail fraud, and Plaintiff has filed complaints with the US Department of Justice, the SEC, and the IRS. Plaintiff discovered the invoices and credits on or about October 2017 and had never seen them before that date. Defendants only updated Plaintiff's Hawaii address when invoiced by Plaintiff for the "Credit Memo."

Shockingly, the Defendants then sent an email stating "Your Documents Are Ready," on January 25th, 2018 (See **EXHIBIT L**). As the Court can see, there was a PDF attached to the email. That PDF that was attached to the January 25th, 2018 invoice is listed in Exhibit A, but the date remains on that invoice as "June 30, 2013," and yet Defendants did not issue or attach the "Credit Memo" issued five months after the invoices in **Exhibit A**, with no explanation as to why, as attached as **Exhibit D**.

Further, the Court can review **Exhibit M**, which further confirms that there was indeed a verbal agreement as claimed, otherwise, why would the Defendants provide "Unlimited Spending +

$20,118.92," "Unlimited spending" resulting in a $2,481.967.24 "invoice" (credited five months later as PAID, when it wasn't), and again for "Unlimited Spending" + $1,609.34. <u>All without an agreement, and all without a credit application ever having been filed.</u> Balancing credibility is important because while Plaintiff only has a verbal agreement to rely on, but Plaintiff has attached numerous documentation by the Defendants that clearly show a credit was issued to Plaintiff, clearly stated to "Do Not Pay…This is a credit to your account," and that it is owed and has been credited. Plaintiff doesn't want advertising credit, Plaintiff wants what was credited, plus interest, taxes (and applicable interests and penalties), and punitive damages for perpetrating this fraud. A mere credit would have brought the balance to $0.00, but as Exhibit in **Exhibit D,** this was a balance owing to Plaintiff. The Defendants cannot claim a defense to a verbal agreement claim, because everything in writing only stems from the Defendants manipulation of the attached documents. It should be noted that Plaintiff filed a Complaint with the IRS (**Exhibit N**), with a reply dated December 12th, 2017 by the IRS. After five years of no attempt "to collect" by the Defendants of such astronomical invoices (which were all based on a false campaign to avoid the terms of our verbal agreement, or why never file a lawsuit for non-payment of it?), on January 25th, 2018, for the first time ever, Plaintiff received the email in **EXHIBIT L**, with the attached PDF as displayed to this Court in **EXHIBIT A**, in retaliation for complaints filed with the IRS and SEC. The only change to the invoice was the Plaintiff's mailing address on that 2013 invoice, an address change made on January 25th, 2018, and the addition of another company, "89148 Productions, LLC", which didn't exist in 2013 (See **EXHIBIT N** confirms this dissolved LLC hadn't even been created until 2015), despite Defendants naming this entity on their invoice dated 2013. This lends further evidence to the fact that there was an individual verbal agreement and the doctoring of the invoices, as Defendants

are attempting to name, on a 2013 invoice as displayed in **EXHIBIT J,** a company that hadn't even existed yet, and is an LLC created years after the invoices that were manufactured by Defendants. The Court will notice this company name, "89148 Productions" is not mentioned in their "Credit Memo" as listed in **Exhibit D**, despite the credit memo supposedly being prepared five months after the invoices in **Exhibit A**, and a date nowhere reflective on the actual invoice in Exhibit A. In short, there may not be evidence of a verbal agreement (which there was), but the documents Defendants have manufactured clearly show that the only thing "in writing," are their own fraudulently created invoices and clear accounting fraud without any explanation. Plaintiff should, in the least, receive the value stated by the Defendants themselves for the campaign that promoted the music video I produced and brought their wholly owned company, YouTube, millions of views in exposure without paying us what was agreed to. So, what is in writing, the Defendants have put in writing themselves.

The Defendants claim the "campaigns" began June 16, 2013 and specifically claim, through their own fraudulently and manipulated invoices in **EXHIBIT A**, that the "invoice" was addressed to Plaintiff in Hawaii (while Plaintiff did reside in Hawaii, Plaintiff didn't move to the address listed on the "**EXHIBIT A**" invoice until September 2017, in fact, the housing community had not even been built yet, as claimed as the address in Defendants invoice in **EXHIBIT K** which dates itself as being issued to that address in 2013. There was never an AdWords account opened under the name "MCS, Inc," "MCS Marketing, Inc," or any other company name. The verbal agreement was made with Plaintiff, individually, consummated by their broadcasting it to over 11 million people, and Plaintiff can only assume the Defendants found these "company names" through the public access Secretary of State websites as they attempted to hinder Plaintiff's ability to file this case Pro Se. Any other claim by Defendants are as doctored as their invoices.

Nowhere on that invoice marked in **EXHIBIT A** does it state the current date, but the "Credit Memo's" claim a Massachusetts address, five months later. Defendants can't have it both ways. Defendants clearly knew Plaintiff was in Hawaii based on their own invoices and our Hawaii company (also listed with the Hawaii Sec. of State, but never provided to them by Plaintiff), and yet on their "Credit Memo's" attempt to claim the "Credit Memo's" were issued to a Massachusetts address (likely to attempt to move jurisdiction to Massachusetts when Plaintiff began to put this all together, in terms of what the Defendants were doing). In addition to the verbal agreement being created while Plaintiff was a resident of Hawaii, Personal jurisdiction and Venue are proper as Google routinely conducts business and provides advertising through its search engine, and Google AdWords, both owned by Alphabet, Inc. Google is the leading search engine and online advertiser in the world, and its wholly owned "YouTube" company has its advertising distributed through Google AdWords (and in Hawaii), the co-defendant in this case who created this "false campaign" for distribution through YouTube in its effort to conceal the verbal agreement and instead turn it into an "Ad Campaign." In short, their own documentation speaks for itself.

Frankly, it's all we have in writing to support our claims, but it is their own Credit Memo's, clearly claim "Do Not Pay. This is a credit to your account. When Plaintiff was able to get co-defendant Google AdWords on the phone, a man named "Ami," claimed a refund for these credits would be issued and had Plaintiff set up an account through a company named "Payoneer" to receive payment directly of the "Credit Memos" from them (See **EXHIBIT O,** Defendants paid this one credit, through Payoneer, also displayed in this Exhibit). In fact, this man "Ami" emailed Plaintiff that this would occur, the same man who emailed us (**EXHIBIT C**), an email that we provided this Honorable Court with a copy of in this Complaint, which we

provided the court with an exhibit of  "Ami" and a man named "Maheef" (both of "Google AdWords") both spoke to me and my associate on the phone, confirmed the credits would be sent via "Payoneer," and never did. **EXHIBIT G** confirms Google AdWords acknowledged, accepted, and promised to pay these credits towards the original agreement, but only paid the $15,106.99 invoice, but not the others in **EXHIBIT D**. The Defendants didn't merely "credit" these amounts, but marked them "PAID," which is very different than a credit. The "Credit Memo's" all mention Plaintiff specifically by name (but none of the invoices do). Defendants admit to a technical error in processing the refunds on October 17th, 2018 (but still reaped the benefits with the more than 11.5 million views that brought those viewers to YouTube and promoted their brand to those viewers), thus crediting our account what we were due towards the original verbal agreement, otherwise, a credit for a technical error would have simply brought the balance to $0, not a "minus" sign following by over $3.5 million admittedly credited to Plaintiff). A payment was then made for $15,106.99 (nowhere near what is owed, but that credit was only the first received, dated September 18th, 2017 and the remaining credits per the attached "Credit Memo's" exhibited in EXHIBIT D due and which were promised to be paid ceased after Google was notified of our filing complaints with the SEC and IRS) through the Payoneer account "Ami" advised us to open (it should be noted that Brian Evans is the artist in the music video, and with my permission created the Payoneer account, as acknowledged by "Ami." On this payment, the Defendants deducted taxes. The other credits in **EXHIBIT D** have yet to be paid, nor the principal paid as they did the payment for $15,106.99. This Honorable Court will notice that in co-defendant AdWords email specifically directed to Plaintiff, they reference Payoneer account number 23980953, and within this exhibit is a document from Payoneer acknowledging that account number as well. The remaining payments promised of the combined credits have to

date never been received.  Plaintiff was advised the remaining "Credit Memo's" would be paid

via the Payoneer account that co-defendant Google AdWords ("Ami," the employee) would be

used (the payment service used through Google, which "Ami" helped Plaintiff set up) to pay the

remaining "Credit Memo's," in his words, "It has already been sent." It was never sent, the

accounts were merely marked as "PAID," in an effort to manipulate the verbal agreement and

instead attempt to create a fraudulent "Google AdWords" account, with no agreement, credit

application, or any information that would authorize such an enormous "ad campaign." While

Defendants may have used "Google AdWords" to service the verbal agreement that was made,

Plaintiff was never paid for it. The fact is, if it were a mere credit, the credit memos would have

been brought to $0, not "This is a credit to your account," as they made $15,000+ payments,

promises to pay the remaining "Credit Memo's," and then completely ignoring the Plaintiff upon

payment demands, and demands to pay the taxes that these invoices would hold him liable for.


Accounting fraud and invoice manipulation, despite this case being filed in civil court, is also a

crime. Defendants have created invoices with "no taxes due" on them, doctored documents with

addresses they could not have possibly known, change company names on their own invoices

and credit memos at their whim, and may have reported this fictional "ad campaign" to

shareholders of their publicly traded company (Plaintiff has also filed a Complaint with the SEC

with the same supporting documents as provided to this Honorable Court). To make matters

worse, Defendants then sent us an invoice for $628.45, for no reason, money never sent to us nor

any services rendered, on January 4th, 2018 (See **EXHIBIT P**). All of this, only when we filed

complaints with the IRS and SEC, in what we can only assume is retaliation. The Court will also

notice that **EXHIBIT P** in this "invoice," completely omits Plaintiff's name, the name "89148

Productions," and adds the name "MCS, Inc." to this newly formed "invoice." The Defendants

appear to clearly have no idea what they are doing, but in Plaintiff's opinion, they know *exactly*

what they are doing as they doctor documents, manipulate invoices, and defraud both Plaintiff,

the IRS. No changes were made to anything until we filed a complaint with IRS and SEC.

To issue invoices to Plaintiff of such enormous amounts immediately put Plaintiff "on the hook"

for such taxes from 2013, credited or not. If Defendants provided what they deem as over $3.5

million in advertising, then issued a "Credit Memo," that does not make tax liability vanish

towards the Plaintiff. Defendants admit to receiving over $3.5 million in advertising to promote

their YouTube company by using our music video production to do so. Apparently, to them,

taxes do not matter. We have had to do the "run around" to make these co-defendants do as they

agreed, but through bizarre means, manipulated accounts, false promises, and fraud by the

Defendants There is simply no explanation for this.

## CONCLUSION

Plaintiff sues Defendants for $12,000,000 plus interest, and any taxes both state and federal for

which the fraudulently created invoices marked "PAID" now have become the responsibility of

Plaintiff.  Hawaii is where Plaintiff resides, resided during the deal, and has resided during the

campaign. No Agreement was ever entered with Google AdWords that would have held

jurisdiction to another venue. The Claims made in this case are within the statutes of limitations

per Haw. Rev. Code Ann. § 490:2-725 (2016); Haw. Rev. Code Ann. § 657-1(1) (2016), and

Haw. Rev. Code Ann. § 657-1(4) (2016) governing both Breach of Contract and Fraud (and falls

within the six-year statutes of limitations, even though we only discovered this fraud by Defendants in 2017). No contract exists that binds to any other state other than Hawaii, where the Agreement took place, and Plaintiff "opted out" of arbitration in this matter after receiving an email displaying these fraudulent manufactured invoices. Any defense to the contrary is as manufactured and recreated as their own invoices. Plaintiff also seeks punitive damages, and all other damages that are proper under the law. Their most recent invoice, which was only sent after we filed various complaints with agencies and sent a Demand for Payment to Google, was then sent to Plaintiff at his Hawaii address, again, confirming their knowledge that Plaintiff resides in Hawaii, and specifically placing our Corporate names on the invoice in an attempt to make certain Plaintiff could not file Pro Se, as an Agreement with a Corporation (or LLC) would have required an attorney to represent any such lawsuit as the one herein being filed. The Defendants have continuously manipulated and doctored their own invoices, failed to pay taxes on invoices that would have made Plaintiff liable for said taxes, and waited over five years to send an invoice to Plaintiff, again, with no taxes listed as due (that new invoice claims to still state that it was issued in July 2013, and the credits listed in the attached exhibits continue to claim they were issued in December of 2013). Exhibit **D** conclusively confirms that Defendants had knowledge of the original Agreement, or they would not have issued a credit for the exact same amount they invoiced Plaintiff for.

Plaintiff respectfully requests this Honorable Court grant him the latitude of a Pro Se litigant until such time an attorney is retained and reserves the right to Amend this Complaint.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331. This Court further has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from

Defendants, (b) the amount in controversy exceeds $75,000 exclusive of interest and costs, and

(c) none of the exceptions under that subsection apply to this action

In addition to the Jurisdictional issue, which Plaintiff believes is covered in his Original

Complaint, Plaintiff believes that the issue of jurisdiction is moot by their own documentation.

The Defendants claim the "campaigns" began June 16, 2013, list these invoices to "MCS

Marketing, Inc" (also known as "MCS, Inc.), and specifically claim, through their own

fraudulently and manipulated invoices in Exhibit A, that the "invoice" was addressed to Plaintiff

in Hawaii (while Plaintiff did reside in Hawaii, Plaintiff didn't move to the address listed on the

"Exhibit A" invoice until September 2017, in fact, the housing community had not even been

built yet, as claimed as the address in Defendants invoice in Exhibit A which dates itself as being

issued to that address in 2013. There was never an AdWords account opened under the name

"MCS, Inc," "MCS Marketing, Inc," or any other company name. The verbal agreement was

made with Plaintiff, individually, and Plaintiff can only assume the Defendants found these

"company names" through the public access Secretary of State websites as they attempted to

hinder Plaintiff's ability to file this case Pro Se. Any other claim by Defendants are as doctored

as their invoices. Nowhere on that invoice marked in Exhibit A does it state the current date, but

the "Credit Memo's" claim a Massachusetts address, five months later. Defendants can't have it

both ways. Defendants clearly knew Plaintiff was in Hawaii based on their own invoices and our

Hawaii company (also listed with the Hawaii Sec. of State, but never provided to them by

Plaintiff), and yet on their "Credit Memo's" attempt to claim the "Credit Memo's" were issued to

a Massachusetts address (likely to attempt to move jurisdiction to Massachusetts when Plaintiff

began to put this all together, in terms of what the Defendants were doing). In addition to the

verbal agreement being created while Plaintiff was a resident of Hawaii, Personal jurisdiction

and Venue are proper as Google routinely conducts business and provides advertising through its search engine, and Google AdWords, both owned by Alphabet, Inc. Google is the leading search engine and online advertiser in the world, and its wholly owned "YouTube" company has its advertising distributed through Google AdWords (and in Hawaii), the co-defendant in this case who created this "false campaign" for distribution through YouTube in its effort to conceal the verbal agreement and instead turn it into an "Ad Campaign." In short, their own documentation speaks for itself.

As it pertains to co-defendant Sundar Pichai, the courts have consistently held that intentional or negligent conduct by a corporate officer will result in personal liability (see Frances T. v. Village Green Owners Association) (See **EXHIBIT E**). Only through discovery will Plaintiff be able to discovery the extent of this co-defendants knowledge of events as it pertains to Plaintiffs claim.

"Similarly, if a corporate officer "authorizes, directs or in some meaningful sense actively participates in the wrongful conduct," personal liability will attach even though the actions were taken by the corporation. In this situation, there is joint liability. Personal liability also enters the equation when a corporate officer engages in fraud."

## JURISDICTION

Jurisdiction is proper under 28 U.S.C. 1332 under Diversity Jurisdiction. Under FRCP 11, by signing below, I certify to the best of my knowledge, information, and belief, that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a

reasonable opportunity to further investigation or discovery; and (4) the complaint otherwise

complies with the requirements of Rule 11. Plaintiff agrees to provide the Clerk's Office with

any changes to my address where case-related papers may be served. I understand my failure to

keep a current address on file with the Clerk's Office may result in the dismissal of my case.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

This Court further has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d),

because (a) at least one member of the putative class is a citizen of a state different from

Defendants, (b) the amount in controversy exceeds $75,000 exclusive of interest and costs, and

(c) none of the exceptions under that subsection apply to this action

Plaintiff believes that the issue of jurisdiction is moot by their own documentation. The

Defendants claim the "campaigns" began June 16, 2013, list these invoices to "MCS Marketing,

Inc" (also known as "MCS, Inc.), and specifically claim, through their own fraudulently and

manipulated invoices in Exhibit A, that the "invoice" was addressed to Plaintiff in Hawaii (while

Plaintiff did reside in Hawaii, Plaintiff didn't move to the address listed on the "Exhibit A"

invoice until September 2017, in fact, the housing community had not even been built yet, as

claimed as the address in Defendants invoice in Exhibit A which dates itself as being issued to

that address in 2013. There was never an AdWords account opened under the name "MCS, Inc,"

"MCS Marketing, Inc," or any other company name. The verbal agreement was made with

Plaintiff, individually, and Plaintiff can only assume the Defendants found these "company

names" through the public access Secretary of State websites as they attempted to hinder

Plaintiff's ability to file this case Pro Se. Any other claim by Defendants are as doctored as their

invoices. Nowhere on that invoice marked in Exhibit A does it state the current date, but the

"Credit Memo's" claim a Massachusetts address, five months later. Defendants can't have it both

ways. Defendants clearly knew Plaintiff was in Hawaii based on their own invoices and our

Hawaii company (also listed with the Hawaii Sec. of State, but information never provided to

them by Plaintiff), and yet on their "Credit Memo's" attempt to claim the "Credit Memo's" were

issued to a Massachusetts address (likely to attempt to move jurisdiction to Massachusetts when

Plaintiff began to put this all together, in terms of what the Defendants were doing). In addition

to the verbal agreement being created while Plaintiff was a resident of Hawaii, personal

jurisdiction and Venue are proper as Google routinely conducts business and provides

advertising through its search engine, and Google AdWords, both owned by Alphabet, Inc.

Google is the leading search engine and online advertiser in the world, and its wholly owned

"YouTube" company has its advertising distributed through Google AdWords (and in Hawaii),

the co-defendant in this case who created this "false campaign" for distribution through

YouTube in its effort to conceal the verbal agreement and instead turn it into an "Ad Campaign."

In short, their own completely manufactured documentation speaks for itself.

Plaintiff prays the Court will grant him Pro Se latitude until such time as an attorney enters this

case.

Respectfully submitted,

MARK ANDREW BILTZ

February 21, 2018