IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| MARK ANDREW BILTZ,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE, INC., *et al.*,<br><br>Defendants. | CIVIL NO. 18-00059 DKW-KJM<br><br>**ORDER DIRECTING SERVICE OF FIRST AMENDED COMPLAINT** |

## INTRODUCTION

On February 22, 2018, Plaintiff Mark Andrew Biltz, proceeding pro se, filed a

First Amended Complaint against Alphabet Inc., Google Inc., Google AdWords,

and Sundar Pichai, alleging claims for breach of contract and fraud.[1]   Dkt. No. 7.

Biltz asserts that Defendants fraudulently created a false "ad campaign," evidenced

by altered invoices, in order to conceal the terms of a verbal agreement to distribute

a music video that he produced on Google's wholly-owned YouTube subsidiary.

For purposes of 28 U.S.C. § 1915, and liberally construed, the First Amended

Complaint sufficiently alleges claims for breach of contract and fraud to proceed

beyond the Court's initial screening.   Accordingly, the Court directs service of the

---

[1]The Court previously granted Biltz's Application to proceed in forma pauperis ("IFP Application"), and dismissed with leave to amend his claims for fraud (Count II) and intentional infliction of emotional distress (Count III).   *See* Dkt. No. 6 (2/20/18 Order).   In his amended complaint, Biltz did not re-allege his previously dismissed claim for intentional infliction of emotional distress.

First Amended Complaint and summons, with instructions below.

### DISCUSSION

Because Biltz is appearing pro se, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)).   The Court recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action."   *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

### I.   The FAC States Claims for Breach of Contract and Fraud

At this preliminary stage and construed liberally, the Court determines, solely for purposes of this initial screening, that the First Amended Complaint ("FAC") alleges plausible state-law claims for breach of contract and fraud.[2]

#### A.   Standard of Review

The Court subjects each civil action commenced pursuant to 28 U.S.C.

---

[2]Biltz alleges that this Court has subject matter jurisdiction under 28 U.S.C. § 1332.   He also asserts that no contract exists "that binds to any other state other than Hawaii, where the Agreement took place, and Plaintiff 'opted out' of arbitration in this matter after receiving an email displaying [certain] fraudulent invoices."   FAC 13–14, 16.

§ 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief."   28 U.S.C. § 1915(e)(2)(B).

Dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'"   *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).   A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).   This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions."   *Iqbal*, 556 U.S. at 678.   Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.* at 679.

### B.   Count II Sufficiently Alleges Claims Sounding in Fraud

Biltz seeks $12,000,000.00 in damages from several Google entities based upon a distribution and marketing agreement with Defendants relating to a Brian Evans' music video entitled "At Fenway."   The Court previously determined that Biltz's Count I claim for breach of contract survives initial screening.   *See* 2/20/18 Order at 6–8 (granting IFP Application and screening Biltz's original Complaint). As detailed below, his amended Count II fraud claim alleges sufficient factual content, accepted as true, to state a claim to relief that is plausible on its face, and further satisfies the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), for purposes of the Court's Section 1915 screening.

Under Hawai'i law—

> Fraud and fraudulent misrepresentation share the same elements. *Compare Fisher v. Grove Farm Co*., 123 Haw. 82, 103, 230 P.3d 382, 403 (Haw. Ct. App. 2009) (stating the elements of a fraud claim) *with Ass'n of Apartment Owners*, 115 Haw. at 263, 167 P.3d   at   256   (stating   the   elements   of   a   fraudulent

4

misrepresentation claim).  Like fraudulent misrepresentation, the elements of fraud are "1) false representations made by the defendant, 2) with knowledge of their falsity (or without knowledge of their truth or falsity), 3) in contemplation of plaintiff's reliance upon them, and 4) plaintiff's detrimental reliance."  *Fisher*, 123 Haw. at 103, 230 P.3d at 403.

*Prim Liab. Co. v. Pace-O-Matic, Inc.*, 2012 WL 263116, at *8 (D. Haw. Jan. 30, 2012).  Biltz adequately alleges facts supporting the elements of fraud and/or fraudulent misrepresentation in his FAC.

Biltz alleges that, on an unspecified date in 2012, "Defendants entered a verbal Agreement with Plaintiff to allow for exclusive distribution via its YouTube platform for the broadcasting of the music video, 'At Fenway,'" which co-stars William Shatner.  FAC at 2.  Biltz produced the music video, and alleges that, under the Agreement, "Evans would receive $1 per view for two full years [and] [t]he video has received more than 11 million views to date on the service."  FAC at 2.  According to Biltz, Defendants "decided not to honor the original Agreement," and "instead turned the exclusive agreement to exclusively broadcast a music video into an 'ad campaign,' through its Google 'AdWords' platform," without his consent.  FAC at 3.  Biltz alleges that "the individual [with] whom this [original] Agreement was entered into was conveniently fired in 2017," around the same time Plaintiff demanded payment.  FAC at 5.

Count II alleges that, without his permission, Defendants converted the

5

distribution Agreement with Biltz into an advertising campaign, for which he was fraudulently billed, and upon his discovery of the fraud, Biltz was credited the amounts back, in an effort to cover up the misrepresentations.   The Complaint alleges that Defendants—

> valued [the campaign] at over $3.5 million, and fraudulently marked the invoices as "PAID," despite the Plaintiff never paying a single dime for the campaign, nor seeking an advertising campaign, applying for credit, or signing any agreement whatsoever with Google AdWords.   In late 2017 Defendants manipulated the invoices as displayed in the attached exhibits.   Not only did this defraud the Plaintiff and the IRS, . . . [a]dditionally, by claiming the invoices were "PAID," it put our former Company, MCS, INC. and potentially the Plaintiff in his individual capacity . . . on the hook for state and federal taxes that were never supposed to exist, never were paid, and never were requested by the Plaintiff.

FAC at 3.[3]

---

[3]Attached to the FAC are screen shots and/or print outs of what appear to be electronic account balances, or invoices, sent to Plaintiff.   According to Biltz, these exhibits reflect "invoices submitted to Plaintiff for this fictional ad campaign, with $0 taxes paid by Defendant," (Ex. A); "statements by Defendants marking the invoices as 'PAID,' when they never were," (Ex. B.); "an email from a Google AdWords employee (to Brian Evans of the music video) requesting to see a signed Agreement, when this Google employee knew the Agreement was verbal and binding, consummated by the broadcasting of the music video on its YouTube platform and making no claim that there was an existing ad campaign," (Ex. C); "Credit Memo[]s totaling $2,482,504.28 and $1,031,589.80, none of which has been paid to Plaintiff towards the amount owed.   In these Credit Memo[]s, they specifically state 'Do Not Pay.   This is a credit for your account.'   And yet, no payment of this credit has been made toward the balance due per the original Agreement" (Ex. D); "When a Demand for Payment was made, Defendants then, again, manipulated the invoices to claim the amounts were due, even invoicing Plaintiff for an amount that he never received," (Ex. F); "an invoice for an amount never paid to the Plaintiff, and on this particular invoice, taxes are noted as due (but not on any other previous invoices, in retaliation for reporting this matter to the SEC and IRS . . .)," (Ex. G.); and "display[ing] invoices 'PAID,' and then manipulated in January 2018, five years after the original invoices, as Defendants attempt to cover up their deception when Plaintiff requested what was owed per the original Agreement," (Ex. H).   FAC at 3–4.

6

It is Biltz's theory that "Defendants were involved in fraudulent misrepresentations and omissions in their own invoices in an attempt to deprive Plaintiff of monies promised in his original verbal agreement, consummated by the broadcast of the music video in question on their wholly owned YouTube platform." FAC at 5.    According to Biltz, "Defendants did not merely credit the accounts to '0,' but admit there is a credit due of these accounts by placing the 'minus sign' on these amounts, amounts that have not [been] refunded towards the original verbal agreement."    FAC at 5.    According to Biltz, "Defendants admit to receiving over $3.5 million in advertising to promote their YouTube company by using our music video production to do so."    FAC at 13.    He explains that, "[t]o issue invoices to Plaintiff of such enormous amounts immediately put [him] 'on the hook' for such taxes from 2013, credited or not."    FAC at 13.

In the FAC, Biltz alleged additional factual details regarding the circumstances constituting fraud in order to cure the deficiencies in his original Complaint.    Under Rule 9(b), a plaintiff must "state with particularity the circumstances constituting fraud or mistake."    Allegations may be deemed sufficient under Rule 9(b) if they identify "the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671–72 (9th Cir. 1993).    Accordingly, a complaint should identify the "who, what, when, where, and how of the misconduct

7

charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).

Moreover, the plaintiff "must set forth what is false or misleading about a statement,

and why it is false." *Id.* Fraud claims, "in addition to pleading with particularity,

also must plead plausible allegations. That is, the pleadings must state 'enough

fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the

misconduct alleged].'" *Cafasso ex rel. United States v. Gen. Dynamics C4 Sys.,

Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly*,

550 U.S. 544, 566 (2007)).[4]

Liberally construing Count II as alleging that Defendants attempted to alter

certain agreements, invoices, or credit memos, the Court concludes both that Biltz

plausibly alleges fraudulent misrepresentations and/or omissions and also that

Defendants have sufficient notice of the misconduct detailed on the specific invoices

and credit memos attached to the FAC in order to respond to the allegations. *See*

Exs. A, D, J, K, and L (Dkt. Nos. 7-1, 7-4, 7-10, 7-11, and 7-12). For example, in

addition to the electronic communications received from various Defendants, Biltz

avers that he spoke on the phone with Google AdWords employees named "Ami"

---

[4]As articulated by the Ninth Circuit, Rule 9(b) serves the following purposes: "(1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints as a pretext for the discovery of unknown wrongs; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal citations and quotation marks omitted).

8

and "Maheef," both of whom confirmed that "credits would be sent via 'Payoneer,'

[but they] never did."   FAC at 10–11 (citing Exs. C and O).   He further specifies—

> The remaining payments promised of the combined credits have to date never been received.   Plaintiff was advised the remaining "Credit Memo's" would be paid via the Payoneer account that co-defendant Google AdWords ("Ami," the employee) would be used (the payment service used through Google, which "Ami" helped Plaintiff set up) to pay the remaining "Credit Memo's," in his words, "It has already been sent."   It was never sent, the accounts were merely marked as "PAID," in an effort to manipulate the verbal agreement and instead attempt to create a fraudulent "Google AdWords" account, with no agreement, credit application, or any information that would authorize such an enormous "ad campaign."    While Defendants may have used "Google AdWords" to service the verbal agreement that was made, Plaintiff was never paid for it.   The fact is, if it were a mere credit, the credit memos would have been brought to $0, not "This is a credit to your account," as they made $15,000+ payments, promises to pay the remaining "Credit Memo's," and then completely ignoring the Plaintiff upon payment demands, and demands to pay the taxes that these invoices would hold him liable for.

FAC at 12.

Biltz thus provides sufficient details such as the date and content of the

emails—with PDF attachments and dated invoices that he alleges were

inappropriately altered after he demanded payment under the original

agreement—the parties involved, and the basis for why the representations are false.

*See Queen's Med. Ctr. v. Kaiser Found. Health Plan, Inc.*, 948 F. Supp. 2d 1131,

1152 (D. Haw. 2013) (holding that defendant had "sufficient notice under Rule 8

and Rule 9(b) to respond" to allegations where "Plaintiff provides sufficient details such as the date and content of the letter, the parties involved, and the basis for why the statements are false").   Accordingly, the Court finds for the limited purpose of Section 1915 screening that, liberally construed, the claims for breach of contract and fraud are sufficiently pled to proceed beyond the Court's initial screening.

## II.    <u>Service of the FAC and Summons</u>

Based upon the granting of the IFP Application and the preceding discussion of Biltz's claims, the Court finds that service of the summons and First Amended Complaint is appropriate.   The U.S. Marshal is ORDERED to serve the First Amended Complaint and summons on Defendants as directed by Plaintiff.   *See* Fed. R. Civ. P. 4(c)(3).   If Defendants accept waivers of service of the summons, they SHALL return the completed waiver of service documents to the U.S. Marshal within sixty days of the date these documents were sent.   The U.S. Marshal shall then file the waiver with the court.   After service is perfected, Defendants are ORDERED to file an Answer or other responsive pleading to the Complaint within the time allowed under Fed. R. Civ. P. 4(d)(3) and 12.

IT IS HEREBY ORDERED that:

(1)    The Clerk's Office is directed to send to Plaintiff for each Defendant to be served:   one copy of the endorsed First Amended Complaint, one summons, one USM-285 form, one Notice of Lawsuit and Request for

Waiver of Service for Summons form (AO 398), two (2) Waiver of Service of Summons forms (AO 399), and an instruction sheet.   The Clerk shall send a copy of this order to the U.S. Marshal. Plaintiff shall complete the forms as directed and submit these documents to the U.S. Marshal in Honolulu, Hawaii.   *See* Fed. R. Civ. P. 4(i).

(2)    Upon receipt of these documents, the U.S. Marshal shall mail a copy of the First Amended Complaint, a completed Notice of Lawsuit and Request for Waiver of Service forms (AO 398), and two completed Waiver of Service of Summons forms (AO 399) (two for each defendant), as directed by Plaintiff pursuant to Fed. R. Civ. P. 4 without payment of costs.

(3)    The U.S. Marshal shall retain the summons and a copy of the First Amended Complaint.   Defendants shall return the Waiver of Service forms to the U.S. Marshal within a reasonable time, not more than sixty days from the date requests for waiver are mailed.   If the Waiver of Service of Summons forms and requests for waiver are returned as undeliverable, the U.S. Marshal shall immediately file them with the court.

11

(4)    If Defendants do not timely return the Waiver of Service of Summons

forms within sixty days of mailing, the U.S. Marshal shall:

a.    Personally serve Defendants pursuant to Fed. R. Civ. P. 4 and 28

U.S.C. § 566(c).

b.    Within ten days after personal service is effected, file the return

of service for each Defendant, along with evidence of any

attempts to secure a waiver of service of summons and of the

costs subsequently incurred in effecting service on said

defendant.   Said costs shall be enumerated on the USM-285

form and shall include the costs incurred by the U.S. Marshal's

office for photocopying additional copies of the summons and

First Amended Complaint and for preparing new USM-285

forms, if required.   Costs of service will be taxed against the

personally served Defendant in accordance with the provisions

of Fed. R. Civ. P. 4(d)(2).

(5)    Defendants shall file an answer or other responsive pleading to

Plaintiff's First Amended Complaint within the time provided in Fed.

R. Civ. P. 12.   Failure to do so may result in the entry of default.

(6)    Plaintiff shall inform the court of any change of address by filing a

"NOTICE OF CHANGE OF ADDRESS."   The notice shall contain

12

only information about the change of address and its effective date and shall not include requests for other relief.   Failure to file such notice may result in the dismissal of the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(7)     Plaintiff is cautioned that if he fails to comply with this Order and his non-compliance prevents timely and proper personal service upon Defendants as set forth in Fed. R. Civ. P. 4(m), this action is subject to dismissal for failure to serve.

(8)     After the First Amended Complaint is served, Plaintiff must serve a copy of all further documents submitted to the court on Defendants or their attorneys.   The U.S. Marshal is not responsible for serving these documents on Plaintiff's behalf.   Plaintiff shall include, with any original paper filed with the Clerk of Court, a certificate stating the date that an exact copy of the document was mailed to Defendant or his counsel.   Any paper received by a District or Magistrate Judge that has not been filed with the Clerk of Court or that does not include a certificate of service will be disregarded.

(9)     Until the First Amended Complaint is served and Defendants or their attorneys file a notice of appearance, Plaintiff SHALL NOT FILE, and the court will take no action on, motions or requests to the court.

## CONCLUSION

Because the First Amended Complaint states plausible claims sufficient to proceed beyond the Court's initial screening, it shall be served as directed herein.

The Clerk's Office is directed to send to Biltz for each Defendant to be served: one copy of the endorsed First Amended Complaint (if he has not already received a copy), one summons, one USM-285 form, one Notice of Lawsuit and Request for Waiver of Service for Summons form (AO 398), two (2) Waiver of Service of Summons forms (AO 399), and an instruction sheet.   Biltz shall complete the forms as directed and submit these documents to the U.S. Marshal in Honolulu, Hawaii.

If Defendants accept waiver of service of the summons, they shall return the completed waiver of service documents to the U.S. Marshal, who will file the waivers with the Court.   Defendants are thereafter directed to file an Answer or other response to the First Amended Complaint within the time allowed under the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: February 27, 2018 at Honolulu, Hawai'i.



_____
Derrick K. Watson
United States District Judge

_Biltz v. Google Inc. et al._; Civil No. 18-00059 DKW-KJM; **ORDER DIRECTING SERVICE OF FIRST AMENDED COMPLAINT**