UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| MARK ANDREW BILTZ,<br><br>           Plaintiff,<br><br>    vs.<br><br>GOOGLE, INC.; GOOGLE ADWORDS; SUNDAR PICHAI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CEO OF GOOGLE, INC.; ALPHABET, INC.; AND DOES 1-50,<br><br>           Defendants. | CIV. NO. 18-00059 DKW<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE AND DENYING PLAINTIFF'S MOTION TO STRIKE** |

## **INTRODUCTION**

In a transparent effort to evade the contractual forum selection clause that he acknowledges binds him, Brian Evans has enlisted the aid of his colleague, Mark Biltz, to stand in his shoes as Plaintiff. According to Biltz, *he* is not bound to litigate this action in Santa Clara County, California because unlike Evans, he did not agree to the YouTube Terms of Service agreement or Google's advertising program's terms, and his claims are, in any event, based on an oral, not written, contract that has no forum selection provisions. *See* Biltz Decl. ¶¶ 3–5, Dkt. No. 39-1; Mem. in Opp'n at 2, 8–9, 10, Dkt. No. 39.

The evident gamesmanship gets Biltz (and Evans) nowhere.  The gravamen of this action is that Google owes Biltz unpaid royalties for an internet video entitled, "At Fenway," that Biltz produced, Evans starred in, and which Evans uploaded to Google's YouTube platform in March 2013.  There is no dispute that the YouTube Terms of Service agreement in effect now, and then, requires any claim arising out of YouTube's services to be brought in Santa Clara County, California.  Whether the agreement's signator was Evans, Biltz, both, or neither, it matters not.  They could not have availed themselves of YouTube's services without subjecting themselves to the same terms of service as every other user.  The claims arising out of YouTube's services, which include all of the claims here, must be brought in California.  *See* 28 U.S.C. § 1404(a); *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59–67 (2013).  Moreover, even if there were no applicable forum selection clause, the Court exercises its discretion pursuant to 28 U.S.C. §§ 1404(a) and 1406(a), *see King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992), and mandates the transfer of this action to the United States District Court for the Northern District of California (San Jose Division), in the interests of justice.

## **BACKGROUND**

Biltz is the only named plaintiff asserting claims for breach of contract and fraud in the amended complaint, filed February 22, 2018.  FAC, Dkt. No. 7.  These

claims are based on an alleged "verbal Agreement" with Google reached on an unspecified date in 2012 that allowed "exclusive distribution via [Google's] YouTube platform for the broadcasting of the music video, 'At Fenway,'" which Biltz produced. FAC at 2, Dkt. No. 7. Under this purported agreement, the artist in the video (Evans) was to "receive $1 per view" of the video on YouTube "for two full years." FAC at 2, Dkt. No. 7. As of February 2018, "[t]he video has received more than 11 million views," yet Biltz claims that no royalty payments have been made. FAC at 2, Dkt. No. 7.

Biltz alleges that Google "decided not to honor . . . the original . . . agreement to exclusively broadcast a music video" in exchange for royalty payments, and instead, without Biltz's permission, converted that agreement "into an 'ad campaign' through its Google 'AdWords' platform," for which Biltz was fraudulently billed. FAC at 3, Dkt. No. 7. Biltz alleges further that upon his discovery of what he refers to as fraud, Google credited the amounts back in an effort to cover up its misrepresentations in a manner that "put [Biltz's] former Company, MCS, INC. and potentially [Biltz] in his individual capacity . . . on the hook for state and federal taxes that were never supposed to exist, never were paid, and never were requested by the Plaintiff." FAC at 4, 7, Dkt. No. 7 (referencing invoices that Google allegedly manipulated in 2017 in order to "defraud" Biltz, its shareholders, and the IRS by marking the invoices as "PAID," causing Biltz and

3

MCS to be liable for unpaid taxes owed in 2013, and "in an effort to avoid payment of the original verbal agreement").[1] Furthermore, Biltz claims that the unnamed individual with whom his purported verbal agreement with Google was entered was "conveniently fired in 2017, around the same time [Biltz] demanded payment." FAC at 5, Dkt. No. 7.

On April 27, 2018, Google filed a Motion to Transfer Venue to the Northern District of California pursuant to forum selection clauses appearing in both a YouTube Terms of Service contract governing the relationship between Google's YouTube platform and its users (Altenschmidt Decl., Ex. A ["YouTube Terms of Service" (6/9/10)] § 14, Dkt. No. 29-5) and Google's Advertising Program Terms, which govern Google's relationship with its advertisers (Cross Decl., Ex. C ["AdWords Agreement" (4/16/18)] § 14, Dkt. No. 29-7). Mem. in Supp. of Mot. to Transfer Venue at 2–3, Dkt. No. 29-1. Biltz initially opposed the Motion to Transfer in a May 3, 2018 memorandum in which he also moved to strike that motion. Mot. to Strike, Dkt. No. 33. On May 10, 2018, Biltz filed a superseding memorandum in opposition ("Opp'n"), in which he opposed the Motion to Transfer arguing both that although he temporarily resides in Washington State (Opp'n at 4, Dkt. No. 39), he is "a permanent resident of the state of Hawaii" (Biltz

---

[1] Evans allegedly filed a whistleblower complaint based on these facts with the IRS on December 2, 2017. *See* FAC, Ex. N [IRS Letter to Brian Evans (12/12/2017)], Dkt. No. 7-14.

4

Decl. ¶ 2, Dkt. No. 39-1), and also that as plaintiff, his selection of Hawaii as the forum is entitled to "great deference" (Opp'n at 4, Dkt. No. 39) (quoting *Schultz v. Hyatt Vacation Mktg. Corp.*, 2011 WL 768735, *3 (N.D. Cal. Feb. 28, 2011)) (citing *Hogan v. Malone Lumber, Inc.*, 800 F. Supp. 1441 (E.D. Tex. 1992)).[2]

For the reasons set forth below, Google's Motion to Transfer Venue (Dkt. No. 29) is GRANTED, and Biltz's Motion to Strike (Dkt. No. 33) is DENIED.

## **LEGAL STANDARD**

Federal law governs the validity, interpretation, and enforceability of a forum selection clause. *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081, 1083 (9th Cir. 2009) (per curiam) (citing *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988)); *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324–25 (9th Cir. 1996). To enforce a mandatory forum selection clause that "clearly designates a forum as . . . exclusive," a litigant may bring a motion to transfer under 28 U.S.C.

---

[2]Biltz appears pro se and, therefore, the Court liberally construes his complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). The Court notes, however, that there is some evidence that Biltz has received assistance from California attorney, Gary Kurtz, Esq., who served Biltz's superseding memorandum in opposition to Google's motion to transfer. *See* Tobin Decl., Ex. G [Kurtz Email (5/9/18)], Dkt. No. 43-2. Mr. Kurtz, however, has not been admitted pro hac vice, and Biltz does not appear to have retained local counsel to represent him in the matter. *See also Cupo v. Aliamanu Sand Castles, LLC*, 2017 WL 6411550, *2 (D. Haw. Dec. 15, 2017) (treating plaintiffs as pro se even though they may have obtained help from Canadian counsel).

§ 1404(a).³ *N. Cal. Dist. Council of Laborers v. Pittsburg–Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir. 1995); *Atl. Marine*, 571 U.S. at 59.

A Section 1404(a) motion to transfer venue ordinarily requires the court to "evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62. "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)). Where such a clause exists, weight is not given to the plaintiff's choice of forum, nor are the parties' private interests considered. *Id*. at 62 (explaining that a court should refuse to enforce a forum selection clause "[o]nly under extraordinary circumstances unrelated to the convenience of the parties"); *Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661, 662 (9th Cir. 2016) (citing *Atl. Marine*, *supra*). Rather, because the parties' private interests are deemed to "weigh entirely in favor of the preselected forum," the court "may consider arguments about public-interest factors only." *Atl. Marine*, 571 U.S. at 64. "[B]ecause [public interest] factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases." *Id.*

---

³Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."

6

Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." The Court has discretion in determining whether to transfer or dismiss an action for improper venue. *See King*, 963 F.2d at 1304.

## DISCUSSION

### I. THE MOTION TO STRIKE HAS NO MERIT.

In his May 3, 2018 filing, Biltz moves to "Strike with Prejudice" the Motion to Transfer "due to deceptive tactics of the Defendants, several of which have still yet to file an appearance in this case." Mot. to Strike at 2, Dkt. No. 33. However, Biltz makes no showing of why he is entitled to the relief he seeks nor does he cite any authority to support striking Defendants' motion. Therefore, Biltz's Motion to Strike is DENIED.

### II. MOTION TO TRANSFER—THE YOUTUBE FORUM SELECTION CLAUSE APPLIES.

The analysis set forth by a unanimous Supreme Court in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas, et al.* "presupposes a contractually valid forum-selection clause." 571 U.S. at 62 n.5; *see Doe 1*, 552 F.3d at 1083 ("[A] forum selection clause is presumptively valid."); *accord Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004). In order to defeat Google's Motion to Transfer (Dkt. No. 29)

7

and overcome this presumption, Biltz "bears a 'heavy burden of proof.'" *Murphy*, 362 F.3d at 1140 (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972)); *Atl. Marine*, 571 U.S. at 62 ("Only under extraordinary circumstances unrelated to convenience of the parties should a § 1404(a) motion be denied."). He must show that the forum selection clauses Defendants rely on (A) are not valid and enforceable, (B) do not apply to his claims, or (C) that Section 1404(a) public interest factors "overwhelmingly disfavor a transfer." *Atl. Marine*, 571 U.S. at 59, 67; *accord Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1157–58 (D. Haw. 2018). Biltz has not satisfied this burden.

    A.    ***The Forum Selection Clauses are Valid and Enforceable***.

        1.    *The Applicable Forum Selection Clauses*

Defendants rely on forum selection clauses contained in two different agreements that are materially similar.

First, under the YouTube Terms of Service agreement, "[b]y using or visiting the YouTube website or any YouTube products, software, data feeds, and services provided to you on, from, or through the YouTube website (collectively the 'Service') you signify your agreement to," among other things, "these terms and conditions . . . ." YouTube Terms of Service § 1A, Dkt. No. 29-5 ("If you do not agree to any of these terms . . . , please do not use the Service."). Section 14 of the YouTube Terms of Service states, in relevant part:

8

> You agree that (i) the Service shall be deemed solely based in California; and (ii) the Service shall be deemed a passive website that does not give rise to personal jurisdiction over YouTube, either specific or general, in jurisdictions other than California. These Terms of Service shall be governed by the internal substantive laws of the State of California, without respect to its conflict of laws principles. *Any claim or dispute between you and YouTube that arises in whole or in part from the Service shall be decided exclusively by a court of competent jurisdiction located in Santa Clara County, California.*

YouTube Terms of Service § 14, Dkt. No. 29-5 (emphasis added).

Second, the terms of Google's AdWords Agreement "govern Customer's participation in Google's advertising programs and services (i) that are accessible through the account(s) given to Customer in connection with these Terms or (ii) that incorporate by reference the Terms (collectively, 'Programs')." AdWords Agreement at 1, Dkt. No. 29-7 ("The Program is an advertising platform on which Customer authorizes Google and its affiliates to use automated tools to format Ads."). Under "Miscellaneous" provisions in the Google AdWords Agreement, customers agree that:

> (a) ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE GOVERNED BY CALIFORNIA LAW, EXCLUDING CALIFORNIA'S CONFLICT OF LAWS RULES, EXCEPT TO THE EXTENT THAT CALIFORNIA LAW IS CONTRARY TO OR PREEMPTED BY FEDERAL LAW. (b) EXCEPT AS PROVIDED IN SECTION 13, *ALL CLAIMS ARISING OUT OF OR RELATING TO THESE TERMS OR THE PROGRAMS WILL BE LITIGATED EXCLUSIVELY IN THE FEDERAL OR STATE COURTS OF SANTA CLARA*

9

*COUNTY, CALIFORNIA*; THE PARTIES CONSENT TO PERSONAL JURISDICTION IN THESE COURTS.

AdWords Agreement § 14, Dkt. No. 29-7 (emphasis added).

    2.    <u>*The Forum Selection Clause in the YouTube Terms of Service Agreement Squarely Applies to Biltz's Claims*</u>.

Here, the YouTube Terms of Service agreement encompasses any dispute that "arises in whole or in part from" "the YouTube website or any YouTube products, software, data feeds, and services provided to you on, from, or through the YouTube website" (YouTube Terms of Service §§ 1.A, 14, Dkt. No. 29-5). The AdWords Agreement applies to disputes "arising out of or relating to" Google's "advertising programs and services [] that are accessible through the account(s) given to Customer in connection with the[] [AdWords Agreement] or [] that incorporate by reference [that agreement]" (AdWords Agreement (4/16/18) at 1, § 14, Dkt. No. 29-7 (capitalization altered)).

Asserting that he "did not post the video to YouTube," Biltz claims that he "did not agree" to the YouTube Terms of Service, which therefore should not apply in the instant suit. *See* Opp'n at 2, 8, Dkt. No. 39 ("Defendant presents no evidence that [Biltz] used or visited 'the YouTube website or any YouTube products, software, data feeds, and services provided . . . on, from, or through the YouTube website.'") (quoting YouTube Terms of Service § 1.A, Dkt. No. 29-5)); Biltz Decl. ¶ 4, Dkt. No. 39-1 (concluding that Biltz "did not agree to YouTube's

Terms of Service in connection with uploading the 'At Fenway' video"). Biltz also claims that he "never agree[d] to the Google Advertising Program Terms because [he] did not open, maintain, or use any Google Advertising Program account." Biltz Decl. ¶ 5, Dkt. No. 39-1; Opp'n at 9, Dkt. No. 39 (arguing that, although the Google "account was opened on behalf of 'Brian Evans Music Group,'" nothing in the record "provide[s] evidence that [Biltz] was a 'Customer' or even knew (or consented to)" any association between his own email and the account in question).

Despite Biltz's contention that "the claim in this action has nothing to do with" the YouTube "service" (Opp'n at 2, 8, Dkt. No. 39), the crux of his allegations is that he entered into a verbal agreement with YouTube to distribute the "At Fenway" video on the YouTube platform and is owed unpaid royalties under that verbal agreement because of the millions of YouTube views that his video has received from other YouTube users. FAC at 2, Dkt. No. 7 (arguing that under the alleged verbal agreement, YouTube would supposedly pay royalties of $1 each time the video was viewed); Biltz Decl. ¶ 3, Dkt. No. 39 (stating that the lawsuit is "based on an oral agreement to pay what in essence was a royalty because [Biltz] was the owner of rights to the 'At Fenway' video that YouTube and Google monetized without [Biltz's] agreement or approval")). Biltz's lawsuit therefore unquestionably arises out of the "use" of the YouTube platform by

11

himself and others. *See* Reply at 9, Dkt. No. 43. Indeed, his complaint would fail to state a claim if the "At Fenway" video had not been uploaded to the YouTube website. *Cf. Adema*, 657 Fed. App'x at 662 (reasoning that claims "relate[d] to the agreement" at issue because "[n]one could go forward had the contract not existed"); YouTube Terms of Service §§ 1.A, 14, Dkt. No. 29-5.

It makes no difference that Biltz may not have uploaded the video to YouTube himself. By using YouTube to distribute the "At Fenway" video under the purported verbal agreement, by alleging that his video has received millions of views on YouTube by other YouTube users, and by alleging those views entitle him to royalties that YouTube agreed to but has not paid, Biltz is bound by the YouTube Terms of Service and its forum selection clause.[4]

### B. *The Bremen Factors Do Not Apply*.

Although there is a presumption in favor of enforcing forum selection clauses, *Bremen*, 407 U.S. at 15, a forum selection clause may be avoided: (1) "if the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "if enforcement would contravene a strong public policy of the forum in which suit is brought."

---

[4] Because all of the claims in the FAC clearly "arise[] in whole or in part from" YouTube's services, and the YouTube Terms of Service agreement undoubtedly applies, the Court need not reach the question of whether the AdWords Agreement, which contains a nearly identical forum-selection clause, separately applies.

12

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2003) (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir.), *cert. denied*, 525 U.S. 943 (1998)), *as amended* (9th Cir. 2004); *accord Adema*, 657 Fed. App'x at 663 (citing, *inter alia*, *Bremen*, 407 U.S. at 12–13, 15, 18); *Petersen v. Boeing Co.*, 715 F.3d 276, 280 (9th Cir. 2013) (citing *Murphy*, *supra*). These exceptions, known as the *Bremen* factors, are narrowly construed. *Argueta*, 87 F. 3d at 325; *accord Dolin*, 289 F. Supp. 3d at 1159 (citing *Argueta*, *supra*).

1. *Biltz Has Not Demonstrated Fraud or Overreaching*.

To establish the invalidity of a forum selection clause based on fraud or overreaching, Biltz must "show that the *inclusion of that clause in the contract* was the product of fraud or coercion." *Richards*, 135 F.3d at 1297 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 518, 519 n.14 (1974) (explaining that the fraud exception in *Bremen* "does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud . . . the [forum selection] clause is unenforceable")). Biltz does not even allege this kind of fraud.

Overreaching, which encompasses conduct "short of fraud," *Murphy*, 362 F.3d at 1141, involves "undue influence" or "overweening bargaining power," *Bremen*, 407 U.S. at 12–13. Although Biltz characterizes Google as "one of the biggest, if not the biggest, company in the world" and asserts that "Defendants answer to no one . . . and believe they are above the law" (FAC at 6, Dkt. No. 7),

13

"unequal bargaining power between the parties," without more, will not invalidate a forum selection clause, *Dolin*, 289 F. Supp. 3d at 1159 (quoting *Murphy*, 362 F.3d at 1141). Biltz offers no other argument, much less any evidence, in support of overreaching.

Therefore, the first *Bremen* factor offers Biltz no refuge.

        2.    <u>*Biltz Will Not Be Deprived of His Day in Court*</u>.

A forum selection clause may also be avoided if "the selected forum is so 'gravely difficult and inconvenient' that the complaining party will 'for all practical purposes be deprived of its day in court.'" *Argueta*, 87 F.3d at 325 (quoting *Bremen*, 407 U.S. at 18).

Here, Biltz argues that Google's Motion to Transfer would allow it to "avoid resolution of this case on its merits" because California's statute of limitations governing oral contracts is significantly shorter than that of Hawaii so "the pathway to a resolution on the merits is certainly more direct [in Hawaii]." Opp'n at 10, Dkt. No. 39 (contrasting Hawaii's six-year statute of limitations under Haw. Rev. Stat. § 657-1 with the two-year limit set forth in Cal. Code Civ. Proc. § 339(1)), yet acknowledging that even under the California statute, "there may be some [b]elated accrual, equitable tolling or equitable estoppel theories to extend the limitations period there"). Biltz also repeatedly emphasizes that he is a

14

"permanent resident" of Hawaii despite his current residence in the state of Washington. Biltz Decl. ¶ 2, Dkt. No. 39-1; Opp'n at 4, Dkt. No. 39.

Even liberally construing these contentions, the difficulty or inconvenience of litigating in California versus Hawaii from Biltz's current residence in the State of Washington hardly moves the needle in Biltz's direction. Indeed, the fact that Biltz resides in Washington State suggests that California would be an entirely reasonable forum that might be even less expensive to litigate in than Hawaii. Moreover, Biltz's very suggestion—that it would be inconvenient to litigate in California for personal financial reasons—is one that *Atlantic Marine* instructs courts not to consider when a forum selection clause governs. 571 U.S. at 64.[5]

Biltz's contention that Hawaii's six-year statute of limitations, and not California's two-year statute, would apply if the action were to remain in this forum is also misguided. That is, although a federal court sitting in diversity must ordinarily follow the choice-of-law rules of the State in which it sits, *Atl. Marine*, 571 U.S. at 65 (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494–96 (1941)), "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules," *id.* at 64–65 (citing *Piper*

---

[5]Even assuming *Atlantic Marine* allowed consideration of financial hardship, Biltz has offered no evidence of any. For example, he has submitted no financial affidavits or other personal financial information. *Compare Murphy*, 362 F.3d at 1142–43 (considering a party's sworn assertions that he was financially unable to litigate in another forum).

*Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). Indeed, courts "should not unnecessarily disrupt the parties' settled expectations" by applying something other than the law of the contractually selected venue in such a situation. *Atl. Marine*, 571 U.S. at 65–66 (noting that "[t]he policies motivating our exception to the *Klaxton* rule for § 1404(a) transfers . . . do not support an extension to cases where a defendant's motion is premised on enforcement of a valid forum selection clause") (citing *Ferens v. John Deere Co.*, 484 U.S. 516, 523 (1990)). And Biltz has not convinced the Court that the situation presented here warrants different treatment.

        3.      *Allowing Transfer Would Not Violate Public Policy*.

Nor has Biltz shown that requiring him to litigate in the agreed-upon forum would contravene important public policy in Hawaii. *See Dolin*, 289 F. Supp. 3d at 1160 ("The final *Bremen* factor is whether enforcement of the forum-selection clause would contravene a strong Hawaii public policy."). In fact, Biltz has entirely failed to address this *Bremen* factor—he neither alleges that transfer would be contrary to any specific Hawaii law/policy, nor does he allege that California law is so different from the law of Hawaii that he would have no remedy for Google's alleged wrongdoings there. *See Adema*, 657 F. App'x at 664 (citing *Doe 1*, 552 F.3d at 1083–84; *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 723 (9th Cir. 1999)); *e.g.*, *Dolin*, 289 F. Supp. 3d at 1160 (applying forum selection clause

where plaintiff did "not allege that transfer in this action would be contrary to any specific Hawaii law or policy," nor did he "allege that forcing him to litigate in California, rather than in Hawaii, would deprive him of a remedy for his claims").

Based on the foregoing, because none of the *Bremen* exceptions applies, the Court finds that there is no reason to disturb the forum selection clause outcome of Santa Clara County, California.

C. *Transfer Pursuant to 28 U.S.C. § 1404(a) is Warranted*.

Public interest factors relevant to the adjudication of a motion to transfer venue include, *inter alia*, "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper*, 454 U.S. at 241 n.6) (brackets omitted). Biltz argues none of these factors.

Nonetheless, the Court has determined that public interest factors weigh in favor of transfer. Indeed, regardless of Biltz's place of permanent residence, he currently lives in the State of Washington (Opp'n at 4, Dkt. No. 39), and all of the Defendants and presumably their witnesses "are based in the Northern District of California" (Mem. in Supp. at 12, Dkt. No. 29-1). In other words, none of the parties presently resides in Hawaii, it is not clear that any of them ever will, and none of the transactions or occurrences arising out of this action occurred in

17

Hawaii. Additionally, as Google points out, the Northern District of California "routinely hears actions arising from the operations of YouTube and Google's AdWords service." Mem. in Supp. at 12, Dkt. No. 29-1 (citing, *inter alia*, *Song fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876 (N.D. Cal. 2015) (deciding claims based on YouTube Terms of Service after transfer from another jurisdiction, 72 F. Supp. 3d, 53, 64 (D.D.C. 2014)); *Woods v. Google Inc.*, 2011 WL 3501403 (N.D. Cal. Aug. 10, 2011) (deciding claims based on AdWords Agreement)). Thus, it is in the public interest for courts in the Northern District of California to hear this diversity action that barely touches Hawaii. *See Creative Tech, Ltd. v. Aztech Sys. PTE*, 61 F.3d 696, 703–04 (9th Cir. 1995) ("The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; (3) local interest in having localized controversies decided at home; (4) the interest in having a diversity case tried in a forum familiar with the law that governs the action; (5) the avoidance of unnecessary problems in conflicts of law.")) (citing *Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1485 (9th Cir. 1987), *as modified*, 861 F.2d 565 (9th Cir. 1988)).[6]

---

[6]Moreover, consistent with the factors discussed herein, and even if there were no applicable forum selection clause, the Court exercises its discretion pursuant to 28 U.S.C. Section 1406(a), and mandates the transfer of this action to the United States District Court for the Northern District of California (San Jose Division), in the interests of justice. *See King*, 963 F.2d at 1304.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Google's Motion to Transfer Venue (Dkt. No. 29) and DENIES Biltz's Motion to Strike (Dkt. No. 33). The Clerk of Court is directed to transfer this action to the United States District Court for the Northern District of California (San Jose Division).

IT IS SO ORDERED.

DATED: July 6, 2018 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

---

*Biltz v. Google, Inc., et al.,* CIV. NO. 18-00059 DKW, **ORDER GRANTING MOTION TO TRANSFER VENUE AND DENYING PLAINTIFF'S MOTION TO STRIKE**